**KOHLER** et, Plaintiffs-Appellants, v. **MAY** et, Defendants-Appellees.

Ohio Appeals, Seventh District, Mahoning County.

No. 3786.   Decided November 18, 1955.

Russel G. Mock, Comus M. Beard, Youngstown, for plaintiffs-appellants.
William E. Pfau, Jr., Youngstown, for defendants-appellees.

### OPINION
Per CURIAM.
Plaintiffs sued defendants, Everett and Velma May, husband and wife, in the court of common pleas to compel them to specifically perform an option-lease agreement obtained from them by plaintiff, Mark C. Kohler, on March 23, 1951.

The trial judge ordered such option-lease agreement cancelled and

ordered defendants to pay into that court $1631.68 interest on $20,000.00 deposited by plaintiff, Mark C. Kohler, in escrow for defendants in the Union National Bank of Youngstown, and entered judgment accordingly.

Plaintiff Kohler appealed to this court on questions of law and fact from the judgment of the trial court.

The case was submitted to us on a transcript of the testimony taken and evidence submitted in the trial court.

The option-lease agreement provided:—

"* * * WITNESSETH: That the said Grantors, their heirs, executors, administrators and assigns in consideration of One Dollar ($1.00), the receipt of which is hereby acknowledged as well as in consideration of the covenants and agreements hereinafter contained to be by said parties kept and performed, do hereby grant unto the said Grantee, their successors and assigns, the exclusive right and option, for a period of 90 days to purchase all profitable, strippable coal underlying a certain tract of land as follows:—

"Situated in the township of Springfield, county of Mahoning and State of Ohio, and bounded and described as follows, to wit: On the North by the Springfield-Petersburg Road and lands of Florence May; on the East of lands of Florence May and lands of Joseph Chewey; on the South by lands of Leonard Goist and John Sedlock and on the West by Beard Road and lands of said John Sedlock. Said premises being known as the Manson Farm and containing 132.32 acres.

"Grantors hereby covenant that they have good title to the premises above described, and that the same are free and clear of all liens and encumbrances except

"During the said period of 90 days the said Grantee shall have the right to test the land above described for coal, provided they cause no damage to growing crops by such testing purposes.

"Time is the essence of this option and unless the said Grantee shall give to the said Grantors notice of their election to take and accept this option within the period of 90 days from date thereof then and in such case this option shall become null and void.

"In case the said Grantee elect to accept this option to strip and remove said coal the said Grantee agree to pay the said Grantors upon the following basis:—$5,000.00 upon giving notice of his election to remove said coal and except (sic) this option, and a like sum of $5,000.00 each year thereafter for a period of 7 years and until the full sum of $40,000.00 has been paid said grantors. Deferred payments to be payable at the beginning of each year following the initial payment. Said deferred payments shall not draw interest so long as grantee permits the grantors to remain on and operate said premises for farming purposes, provided however, that said farming operations shall not interfere with the stripping operations of grantee, and provided further, that if grantee elects to require grantors to move from said premises, he may do so, but said deferred payments shall then draw interest at the rate of 4% interest, payable annually, from the date grantors are required to move. For the payments, aforesaid, grantee has purchased all the coal underlying said premises with the right to strip, mine and remove the

same, and also, every right necessary, incidental and proper for the purpose of stripping, mining and removing said coal, including the right to move the buildings if necessary. In consideration of the purchase of said coal, at a stipulated price, satisfactory to grantors, payable as herein provided, and also in consideration of the covenants and agreements of the grantee, herein expressed, the grantors hereby agree to convey the fee title of said premises to the grantee upon the payment of the final $5,000.00 royalty installment, and to execute and deliver a general warranty deed therefor to said grantee free and clear of incumbrances except for a right-of-way to the Tennesee Gas Transmission Co., and taxes for the year 1951, and thereafter, but grantors agree to pay taxes and assessments on said premises so long as grantee permits them to occupy and operate the same for farming purposes. At the time of the delivery of said deed, grantors agree to furnish an abstract extended to date of conveyance as near as practicable, reflecting a good and marketable title in grantors subject to above exceptions, this coal lease, and to any liens of nature whatsoever created by the grantee, his heirs, executors, administrators and assigns. It being considered a valuable right in the grantors to have the royalty hereunder paid in annual installments, the grantee is expressly denied the right to accelerate said royalty payments."

Within the period of 90 days provided in the option-lease agreement plaintiff elected to accept the terms, conditions and covenants of the option-lease agreement and entered into possession of the premises and proceeded to strip mine the coal laying thereunder.

Defendants refused to accept the payments in accordance with the terms of the option lease agreement, or otherwise perform the terms thereof.

Negotiations leading to the execution of the option lease agreement were commenced in 1950.

Early in 1951 defendant, Everett May, was advised by his physician that he was suffering from multiple sclerosis and advised him that if he curtailed his activities he should be able to live a nearly normal life.

Shortly before the middle of March, 1951, plaintiff Kohler introduced defendant, Everett May, to and recommended that he consult Dr. Wilkins, an unlicensed physician in Youngstown, for diagnosis and treatment. Upon examination by Dr. Wilkins he advised defendant, Everett May, that he felt he could cure his illness with further treatment and massaged defendant's neck. During such consultation and subsequent treatments coal operations on the farm of plaintiff Kohler and his negotiations with defendant, Everett May, were discussed by Dr. Wilkins and defendant, Everett May.

In accordance with the advice given him by Dr. Wilkins defendant, Everett May, visited him on two subsequent occasions. On the last of such occasions, which was a few days before the execution of the option-lease agreement, Dr. Wilkins advised defendant, Everett May, that there was nothing he, nor any other physician could do for him, and that "his days were numbered"; and that if he had an opportunity to deal with plaintiff Kohler and thereby secure the future of his wife and children

he should do so for he was not going to be around much longer to earn a living for them nor himself. Defendant claims this advice unduly influenced him in executing such option lease agreement.

From the record before this court we find that in executing the option-lease agreement the defendants acted not upon any false or fraudulent representation made by the plaintiff to the defendants but acted solely upon the advice of Dr. Wilkins to whom the defendant, Everett May, subjected himself for examination and treatment of the physical condition with which he was then suffering.

There is no evidence in this record warranting a finding that such physician was the agent or representative of the plaintiff Kohler whereby it can be claimed that the defendants acted upon any false or fraudulent representations of Kohler which induced the defendants to execute such option-lease agreement, nor is there proof of the required degree showing that Dr. Wilkins perpetrated a fraud upon the defendants which induced them to execute the agreement prepared for them by their attorney.

It appears from the record upon cross-examination of the defendant, Everett May, that the reason for his refusal to accept the payments proffered by plaintiffs in accordance with the agreement was because he was dissatisfied with conditions accompanying the strip mining method of mining coal and not because he was fraudulently induced to enter into the agreement.

There is evidence that prior to March 1951 plaintiff Kohler had a written lease drafted providing for the exclusive purchase of the coal rights in defendants' lands for $30,000.00 which defendant May refused to sign because he was not satisfied with the price, but that he would be interested if the price were increased; that the agreement around which the controversy between the parties revolves was drafted by defendant May's attorney at his request acting alone during negotiations between plaintiff and defendants, and not in the presence of plaintiff, and that it was drawn in accordance with the wishes of defendant, Everett May, and signed by him and his wife on the following day in his attorney's office. That agreement provided as set forth above.

By the act of Dr. Wilkins defendants contend that plaintiff Kohler took advantage of defendant, Everett May's physical condition; that the option lease agreement was secured by fraud; and that the acts of plaintiff Kohler in connection therewith were fraudulent and inequitable.

The simple question presented to this court by the pleadings and the evidence is whether plaintiffs are entitled to have defendants specifically perform the option lease agreement.

In our opinion defendants have not proved by clear and convincing evidence that:—

"* * * (1) that there was actual or implied representations of material matters of fact, (2) that such representations were false, (3) that such representations were made by one party to the other with knowledge of their falsity, (4) that they were made with intent to mislead a party to rely thereon, and (5) that such party relied on such representations with a right to rely thereon.

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

"One who seeks to rescind a contract procured by fraudulent representations must exercise his right to rescind within a reasonable time after discovering the facts entitling him to rescind, and whether he has acted within a reasonable time is generally a question for the trier of facts." **Cross v. Ledford, 161 Oh St 469.**

Defendants having in our opinion failed to exercise their right to rescind the option lease agreement within a reasonable time, and having failed to carry the burden of proof imposed upon them by the decision in the case of Cross v. Ledford, supra, we conclude that plaintiffs are entitled to have defendants specifically perform the option lease agreement.

Decree accordingly.

PHILLIPS, PJ, NICHOLS and GRIFFITH, JJ, concur.